DECISION
The issue before the Court is whether defendants Joseph A. Lucena as well as certain members of his family and his related business entities, including Arrowhead Construction Co., Inc. and Arrowhead Farm Holding Corp., are engaged in an illegal use of his residential and agricultural property. For the reasons set forth in this decision, this Court declares that the defendants are illegally using the property in question in furtherance of their construction contracting and equipment leasing businesses and grants the Town injunctive relief to bar the continued use of the property for those illegal purposes.
 FACTS/TRAVEL
In 1977, defendant Joseph A. Lucena and his wife, defendant Juliet C. Lucena, acquired approximately four acres of agricultural land located at 365 West Wrentham Road in Cumberland, Rhode Island, as described as Tax Assessor's Plat 49, Lots 95, 101 and 102 (the "Property"). After they purchased the Property, the Lucenas proceeded to build a home on the Property and plant an apple orchard. In addition, a few turkeys roamed their Property from time to time. They sold some of the topsoil from the Property, some of the turkeys and apples.
In the mid-1980's, however, the bucolic nature of the Lucenas' "life on the farm" began to change. Realizing that he could not make a living off of the land (either by raising turkeys or selling apples), Joseph Lucena decided to go into the business of landscaping and general construction and the leasing and rental of construction equipment. Over the years that followed, he used the Property to further these business endeavors. He also continued to sell apples.
In 1986, the defendant incorporated a business known as Arrowhead Farm Landscaping, Inc. It had a business address of West Wrentham Road in Cumberland, Rhode Island (the Property). Its stated purpose, according to the original articles of incorporation, was "landscaping business and general construction business." In 1988, the defendant changed the name of that corporation to Arrowhead Construction Co., Inc. ("Arrowhead Construction"). In 1991, he amended the articles of incorporation to expand the business purposes of the corporation to include "general construction including underground utility, site excavation, asphalt paving, cement concrete work and landscaping business engaging in any and all lawful business whatsoever necessary in connection with and incidental to the exercise, attainment or furtherance of the purpose herein above set forth." In the annual reports filed for these corporations from 1987 through 1999, the corporation's principal place of business is listed as West Wrentham Road (the Property), and the description of the business is listed in various ways, including landscaping, landscaping construction, site construction, construction site contractors, general construction, general contractor or site contractor. Defendant Joseph Lucena is an officer and one-third owner of the corporation.
Arrowhead Construction has been qualified to do business in Massachusetts since 1995 and, in filings with the Secretary of the Commonwealth, has listed its business address as 365 Wrentham Road (the Property) and described its business as site construction, landscaping and roadside development, surfacing, underground utility and excavation. It has been a registered contractor in Rhode Island since 1990 and has described its business in the Blue Book of Building and Construction and on its web page as including excavation, underground utilities, sewer, water, drainage, septic systems, asphalt paving, curbing and screened loam. The corporation has engaged in substantial construction work for municipalities. Indeed, as of 1994, 60% of the business of Arrowhead Construction was for municipal contracts, and it employed seven employees. In 1995, it contracted with the Town of Cumberland for the repair of ball fields, in 1997 it contracted with the City of Woonsocket to reconstruct tennis courts, it bid for a construction project for Diamond Hill Park in Cumberland in January, 2000 and the Town of Cumberland awarded it a contract for a sewer project at the Hayden Library that same month (contingent on it not running any equipment from the Property).
In 1993, defendant Joseph A. Lucena incorporated Arrowhead Holding Company and listed its purpose as "involved with the construction business" and its address as 365 Wrentham Road (the Property). In annual reports filed in 1996 and 1997, it listed its principal place of business as the Property address and indicated that it was engaged in the business of construction equipment rental and/or equipment leasing. In 1998, the name of the corporation was changed to Arrowhead Farm Holding Corporation, and it began listing its address as a post office box in Cumberland ("Arrowhead Farm Holding"). The purpose of Arrowhead Farm Holding is to rent heavy construction equipment, including bulldozers, backhoes, dump trucks, spreader boxes and tagalong trailers, to Arrowhead Construction for its construction work or to use that equipment itself in connection with such business. 3
Although much of the work of Arrowhead Construction takes place off-site, in locations other than on the Property, a substantial nexus between that corporation and the Property has existed since the mid-1980's. That nexus increased dramatically over time and in the 1990's expanded to include broader construction contracts, necessitating heavier equipment, and the need for Arrowhead Farm Holding to lease equipment to Arrowhead Construction to further its off-site construction work.
Arrowhead Construction transports earth materials to the Property from its construction work sites off of the premises. Those materials are then screened and sorted on the Property into piles of loam and "tail ends" using a screener owned by Arrowhead Farm Holding and then sold. Loam and mulch are transported from off-site to the Property and then sold. Those products sold from the Property are used largely by Arrowhead Construction in its off-site construction projects.
Arrowhead Construction owns four pickup trucks and an air compressor which are kept, maintained, and serviced on the Property and used off-site for landscaping, site preparation, excavations and sewer and drain pipe laying. Employees of Arrowhead Construction park their personal vehicles on the Property and may leave cars there when using the equipment belonging to Arrowhead Farm Holding. Arrowhead Construction owns and maintains a computer software program known as Agtek Graphical Operating System that is used for site work engineering and a Topcon Pipe Laser used to determine the grade and line for the setting of pipes.
Arrowhead Farm Holding maintains its business office with employees in the rear of the Lucenas' residence on the Property. It employs 5-6 people, including office workers, a yardman and a mechanic to maintain the equipment. Arrowhead Farm Holding rents construction equipment, including a bulldozer, backhoe, dump truck, spreader box and tagalong trailers exclusively to Arrowhead Construction both on and off the Property. Arrowhead Holding hauls loam off the Property when it is sold and brings it to the Arrowhead Construction job site. Arrowhead Farm Holding owns a used Ingersoll Rand vibratory roller, customarily used in earthwork construction. It keeps, maintains and services on the Property an excavator, bulldozer, three rollers, three dump trucks, three pickup trucks, and four tractor-trailers. It also owns and keeps on the Property a 1979 Isuzu spreader, customarily used for asphalt. This equipment is used off-site for landscaping, site preparation, excavations and sewer and drain pipe laying engaged in by Arrowhead Construction. Arrowhead Holding also stores fuel on the Property in outdoor storage tanks.
All of the business activities of Arrowhead Construction and Arrowhead Farm Holding hardly went unnoticed by the Lucenas' neighbors. Beginning around 1985, Dr. Pagonis testified that he observed heavy equipment on the Property. He noted that the activity increased in intensity before reaching its zenith in the mid-1990's. He talked about observing large dump trucks; trailers; twelve, fourteen, sixteen and eighteen wheeler trucks; and asphalt trucks. He described a continuous stream of big trucks on weekdays and Saturdays from early in the morning and for hours thereafter. His observations were shared by other neighbors. Mr. Lambert testified that the activity really got out of hand about 1996. Mr. Janczar, an IRS investigator, testified that in the early 1990's there was a growth in the size of the trucks and the number of construction vehicles leaving the Property and that the number increased incrementally each year after that. He observed trucks and trailers, backhoes, a rock crusher and other equipment on the site, and he observed equipment vehicles leaving the Property, via West Wrentham Road, that were labeled Arrowhead and Arrowhead Construction.
When they could not tolerate this situation any more, the neighbors hired counsel and filed a formal complaint with town officials about defendant Lucena's use of his Property. On September 23, 1997, the building and zoning official for the Town of Cumberland issued a cease and desist order to defendant Joseph Lucena advising him that the operation of a construction company from his Property was not a permitted use under either the pre-1994 or the 1994 Zoning Ordinance and ordering him, within 21 days, to cease that activity. The letter further advised Mr. Lucena that a fine of $500 per day could be assessed for his noncompliance. Defendant Lucena filed an appeal of this cease and desist order which he eventually withdrew after discussions with the Town.
Thereafter, defendant Lucena continued to use the Property for his business activities as described previously by this Court. In May 1998, the Town filed criminal charges against defendant Joseph Lucena, alleging that he was willfully using his Property for illegal purposes. In July 1998, plaintiffs Aline and John Janczar, Gloria and Raymond Lambert, Adele and Norman Mahoney and Betty and Constantine Pagonis, M.D., also known as the West Wrentham Neighbors Association, filed a nuisance action in this Court against defendants Joseph and Juliet Lucena, David Lucena, Michael Lucena, Arrowhead Construction Co., Inc. and Arrowhead Farm Holding Corp., (PC98-4067). They seek a determination by this Court that the defendants are illegally using the Property for the commercial business purposes of Arrowhead Construction and Arrowhead Farm Holding, thereby creating a nuisance, and an injunction to prevent that use of the Property. Defendant Joseph Lucena has filed a counterclaim in this action against plaintiffs for malicious prosecution.
In October 1998, after the dismissal of the criminal charges against defendant Joseph Lucena, the Town filed an action against defendants Joseph and Juliet Lucena, pursuant to R.I. Gen. Laws section 45-24-60(B), to enforce its cease and desist order (PC98-5278). The Town seeks a declaration that the defendants are using the Property illegally by maintaining and operating thereon a construction company and construction leasing company and injunctive relief to bar their continued illegal use of the Property. The Town also seeks imposition of a fine against the defendants for their willful noncompliance with the previously issued cease and desist order. Defendant Joseph Lucena has filed a counterclaim against the Town in this action for malicious prosecution.
The action brought by the West Wrentham Neighbors Association and the action brought by the Town have been consolidated by the Court. It was agreed by the parties, however, that the nuisance action, filed by the West Wrentham Neighbors Association, and the counterclaims asserted by defendant Joseph Lucena in both actions would be held in abeyance pending the Court's hearing and decision of the Town's action for declaratory and injunctive relief. Both actions share a common issue — namely whether the defendants' business operations constitute an illegal use of the Property — and the parties in both actions agree to be bound by this Court's determination of this issue, subject to any right of appeal. The plaintiffs who comprise the West Wrentham Neighbors Association actively support the Town in its action against the defendants.
The Court heard this matter during a consolidated hearing on the Town's request for declaratory relief and a preliminary and permanent injunction. As part of that hearing, the parties to both actions submitted stipulated facts, testimony and documentary evidence, and extensive post-trial briefs.
 ANALYSIS
The Town and the West Wrentham Neighbors Association contend that the activities carried on by Arrowhead Construction on the Property, with the consent of and to the benefit of the Lucenas, are for the purpose of operating and maintaining a commercial construction business in violation of the applicable zoning ordinance. They argue that these activities constitute a contract construction service that is explicitly prohibited in this zone. In addition, they contend that these activities constitute an illegal use of the Property because they are not accessory or incidental to the agricultural use of the Property but indeed are the principal uses of the Property.
The Town and the neighbors also argue that the activities carried on by Arrowhead Farm Holding on the Property, with the consent of and to the benefit of the Lucenas, are for the purpose of operating and maintaining a contractor's equipment rental business and furthering the business of Arrowhead Construction in violation of the applicable zoning ordinance. They maintain that these activities of Arrowhead Farm Holding constitute the outdoor storage of a contractor's equipment that is explicitly prohibited in this zone. In addition, they contend that these activities of storing and parking construction equipment on the Property constitute an illegal use of the Property because no such activity is allowed in the zone except where the equipment is used exclusively for agricultural purposes.
The defendants respond that the principal uses of the Property today are agricultural, as permitted by the applicable zoning ordinance, and include the cultivation of the apple orchards, the screening of loam and the sale of mulch. They argue that the equipment on the Property has been used for agricultural and farming activities, including constructing farm buildings, digging a pond for cattle, processing loam, grading the Property for pastures and apple orchards, maintaining pastures, and processing topsoil. They contend that the use of the equipment off-site for landscaping and excavation is a valid accessory use incidental to defendants' use of the Property for farming and agricultural activities and does not constitute a contract construction service prohibited by the applicable zoning ordinance. Finally, defendants argue, alternatively, that even if these activities are not permitted under the applicable zoning ordinance today, they constitute a legally permitted nonconforming use as a result of their maintenance of equipment on the Property and processing of topsoil in the years predating the 1994 Zoning Ordinance.
The central issue dividing these parties, therefore, is whether the activities of the defendants and their related corporations on the Property violate the applicable zoning ordinance. To resolve that issue, it is first necessary to review the zoning ordinances applicable to the Property.
 The Zoning Ordinances
At the time the Lucenas purchased the Property, the land was zoned Agricultural A. See Jt. Ex. 3 (the pre-1994 Zoning Map). Permitted principal uses for the Property at that time included residential uses, agricultural uses that involved the growing of crops (including orchards and truck gardening) and farms for the hatching, raising and marketing of certain animals (including turkeys) and the breeding, raising or grazing of horses, cattle, sheep and goats. See Town of Cumberland Zoning Ordinance, Jt. Ex. 1, at 1-10 1-10a (the "Ordinance" or the "pre-1994 Ordinance"). The Ordinance also permitted the Property to be used for certain purposes accessory or incidental to those principal uses, namely for the display and sale of products produced on the Property, the sale of machinery, equipment and materials used for agricultural purposes and the construction of buildings, including a garage, accessory living quarters, greenhouse, stable, barn, pen, coop, kennel, crib, silo and any and all other buildings incidental to and necessary for the carrying on of the agricultural use permitted. Ordinance, Jt. Ex. 1, at 1-10a, #9a; 1-10a, #9b; 14-1 and 1-10a.
The Property is currently zoned A-2 (Agricultural, Medium Density and One Household District) which is "intended for agricultural use and rural density single family dwelling units located on lots with minimum land area of 80,000 square feet." Town of Cumberland Zoning Ordinance, enacted June 29, 1994, Section 1-2(a), Jt. Ex. 2 (the "Ordinance" or the "1994 Ordinance"); 1994 Zoning Map, Jt. Ex. 4. The agricultural uses permitted under the 1994 Ordinance include a dairy farm (including the raising and boarding of cattle and hens for the purpose of producing milk and eggs and apparatus to assist in that production other than the food processing of dairy products), a fruit orchard (including related equipment for harvesting the crop but not including food processing or canning of fruit and related produce), general crops (including the raising of vegetables, corn, hay, sod, trees, flowers, nursery plants and similar crops commonly used for household consumption, but not including fruit orchards, food processing, canning, baking and the like), animal husbandry (including the breeding of livestock for food production, pets, fish and fowl, animals used for scientific and laboratory testing, but not including swine or pigs, animals used for the testing of cosmetic products and rare or dangerous animals), and a one household detached dwelling. 1994 Ordinance, Jt. Ex. 2, Table of Use Regulations, at 16. The 1994 Ordinance also permits the Property to be used for certain purposes accessory or incidental to those principal uses, namely for construction of a farm house, the storage of farm related equipment and the retail sale of products grown or raised on the Property. 1994 Ordinance, Jt. Ex. 2, App. A and B. An accessory use is defined as the use of land or a building which is customarily incidental or subordinate to the principal use of the land or building, and an accessory use shall not be permitted without the principal use to which it is related. Jt. Ex. 2 at 91.
The 1994 Ordinance bars the Property from being used for any use other than that permitted in the zone in which it is located. 1994 Ordinance, Jt. Ex. 2, at section 1.6. Contract construction services (which includes general contract construction services) (use code 47), wholesale trade outdoor storage (which includes a contractor's equipment rental, storage and maintenance and farm products used in wholesale trade) (use code 52) and bulk storage of petroleum (which includes the bulk storage of any petroleum products) (use code 53) are specifically prohibited in an A-2 zoning district. 1994 Ordinance, Jt. Ex. 2, at 21-22.
In January 1998, the Zoning Ordinance was amended to encourage farming and agricultural activities within the Town of Cumberland by allowing for the retail sale of certain farm and farm-related products. See Art. 11 of Zoning Ordinance. Under these provisions, agricultural land of at least 5 acres may be used by a farmer (an individual, partnership or corporation operating a farm who has filed a Form 1040 (Schedule F) with the Internal Revenue Service or has a Rhode Island farm tax identification number) for certain retail farm sales purposes. These activities include not only the retail sale of farm products normally associated with a farm or raised or produced on the premises but also sales of vegetative products not raised on the premises, sales of compost or manure produced on the premises only, sales of vegetative mulch and retail sales of farm-related products, as defined in the ordinance. No more than 150 cubic yards of mulch that is not produced on the property may be stockpiled on the premises at any one time. The sale of mulch comprised of earth products such as stone, sand or loam is prohibited. The sale of farm-related products includes the retail sale of products which are capable of being built, constructed, crafted or manufactured on a farm by a farmer or his or her family members (such as arts and crafts). It also includes lawn and garden supplies such as potting soil, peat moss or other soil amendments, seeds, pots, planters and the like but excludes products that must be manufactured.
 Applying the Zoning Ordinances to Defendants' Activities
This Court rejects the defendants' proposition that the Property is currently being used by the Lucenas principally for agricultural purposes or for uses accessory to any agricultural use. The Property is being used principally for the construction and equipment rental businesses of Arrowhead Construction and Arrowhead Farm Holding or for uses accessory to those businesses. Earth materials are transported to the Property by Arrowhead Construction from its work sites off the premises and then screened and sorted on the Property and sold. Mulch and loam is purchased by defendant Lucena from off-site, trucked to the Property and then sold. The mulch and loam sold is used primarily, if not exclusively, in connection with the company's ongoing construction and landscaping projects. The equipment and petroleum on the Property is used primarily, if not exclusively, to further these business purposes.
These activities are not principal agricultural uses of the Property that are permitted in the applicable zoning district. This mulch and loam is in no way derived from the land or used in conjunction with any farming activity on the land. While defendant Joseph Lucena attempted to suggest that the processing of loam on the Property involved the use of topsoil stockpiled from the Property, this Court does not accept that testimony; any topsoil stockpiled on the Property from activities on the Property before the mid-1980's has long ago been used or sold.
In addition, the equipment on the Property is used primarily in connection with the construction business of Arrowhead Construction and the equipment rental business of Arrowhead Farm Holding that is related thereto. See Jt. Ex. 23. This Court rejects defendant Lucena's attempt to characterize all of this equipment as "farming" equipment. The heavy nature of most of the equipment, the extent to which it was observed coming to and from the Property and his transparently exaggerated, self-serving testimony in this regard suggest that most, if not all, of the equipment is used exclusively in connection with the construction and equipment rental businesses of Arrowhead Construction and Arrowhead Farm Holding; at a minimum, it is clear that the equipment is not used exclusively in connection with any agricultural operations on the Property (such as harvesting apples or grading the land). Petroleum stored on the Property similarly is used primarily, if not exclusively, in connection with the equipment rented by Arrowhead Farm Holding and used by Arrowhead Construction and certainly is not used exclusively in connection with farming equipment used on the Property.
Moreover, these activities are not permissible accessory uses of the Property. Neither the mulch nor the loam are products that come from the Property itself nor are they derived from any earth materials from the Property. These materials are not used in any agricultural operations on the Property. The transport of earth materials to the Property for processing likewise does not involve any product that comes from the Property itself nor is the processed material or its remnants used in connection with any farming activity occurring on the Property. It is impossible, therefore, to tie the activities of transporting earth materials from Arrowhead Construction's construction sites to the Property for processing and the transport of loam and mulch to the Property for resale for use primarily in Arrowhead Construction's landscaping and construction business to any principal farming activity on the Property, as would be required to find these activities valid accessory uses of the Property under the applicable zoning ordinance.
While the latest zoning amendments allow for agricultural property to be used for the retail sale of certain farm-related products that are not the product of the land itself, it is implicit that these uses still must be accessory to the principal use of the property for farming. In this regard, this provision of the ordinance applies to farmers who are operating farms. Those sales are permitted only at retail on farms over five acres by certain defined farmers. In addition, the products themselves are regulated.
Here, the sale of mulch and loam, as noted previously, is not accessory to a farming use of the Property. The bulk of those sales appear not to be retail sales (from Joseph Lucena directly to a member of the public), but instead appear to be wholesale transactions with Arrowhead Construction either as the principal seller (in which case defendant Lucena is clearly not using the Property for farming purposes) or as an intermediary between defendant Lucena and the end user/customer of Arrowhead Construction. Even if any of the sales were considered to be valid retail accessory uses, the Property in question appears to be of insufficient acreage and the defendants appear to be insufficiently documented as farmers for those sales to come within the terms of this zoning provision. Moreover, the products described in the ordinance do not include processed loam or loam or mulch with no larger connection to farming activity on the Property.
The equipment stored and used on the Property and the petroleum stored on the premises in connection therewith likewise cannot be characterized as farm-related equipment accessory to any agricultural use of the Property. This heavy equipment is rented and used in furtherance of the business of Arrowhead Construction and Arrowhead Farm Holding, as evidenced by the heavy nature of the equipment, its volume, the extent to which it is seen coming from and going to the Property and the growth of these businesses. It is ludicrous to suggest that all of that equipment is necessary for or has been used in connection with the farming activities on the Property such as harvesting apples or grading the land.
Indeed, these activities on the Property are impermissible under the applicable zoning ordinance and also were impermissible under the zoning ordinance in its prior forms. The Lucenas use the Property for the receipt and processing of earth materials from Arrowhead Construction, the wholesale distribution of mulch and loam for Arrowhead Construction's contracting business, the storage and rental of equipment from Arrowhead Farm Holding to Arrowhead Construction for use in its construction business, the storage of petroleum products for use with that equipment and other general business purposes of Arrowhead Construction and Arrowhead Farm Holding. In so doing, they are violating the prohibition in the current as well as the past zoning ordinances against using the Property for contract construction services, as these activities are tied to the general contracting construction business of Arrowhead Construction. In addition, they are violating the zoning ordinance's prohibition against using the Property for wholesale trade outdoor storage, as these activities involve the storage, rental and maintenance of equipment rented by Arrowhead Farm Holding to Arrowhead Construction for use in the latter company's construction business and the wholesale processing and distribution of earth materials and mulch and loam. Furthermore, their storage of petroleum on the Property for use with that equipment is violative of the zoning ordinance's prohibition against the storage of petroleum products on the Property. The defendants admitted as much by not contesting the cease and desist order issued against them by the Town in 1997.
The defendants may not justify any of these activities as legally existing nonconforming uses of the Property. A prior use, to be a legally existing prior nonconforming use, must have been valid at the time. To the extent the Property was used by the defendants before the 1994 zoning amendments for any of the activities that have been deemed by this Court to be invalid principal or accessory uses under the current zoning ordinance, those activities were just as illegal then as they are now.
 Declaratory and Injunctive Relief
This Court declares that the defendants have violated the applicable zoning ordinance, as previously described, by using the Property (1) for the general contract construction business of Arrowhead Construction; (2) for the equipment rental and leasing business of Arrowhead Farm Holding; (3) to receive earth materials from Arrowhead Construction's operations off-site and to process and sell that material on the Property; (4) to receive, store and sell loam; (5) to receive, store and sell mulch; and (5) to maintain and store equipment, machinery and petroleum products that are not used exclusively in connection with their permitted agricultural use of the Property. Accordingly, the defendants are hereby permanently restrained and enjoined from:
1. Using the Property for the construction, landscaping, excavation or related business operations of Arrowhead Construction Company, Inc. (or its successors or assigns);
2. Using the Property for the equipment rental, equipment leasing or related business operations of Arrowhead Farm Holding Corporation (or its successors or assigns);
3. Using the Property to receive and store earth materials from off-site for processing on-site into loam and/or tail ends for sale;
4. Using the Property to receive, store and sell loam (as opposed to using loam exclusively in connection with their permitted agricultural use of the Property);
5. Using the Property to receive, store and sell mulch (as opposed to using mulch exclusively in connection with their permitted agricultural use of the Property); and 6. Using the Property for the maintenance and storage of equipment and machinery (and petroleum products connected therewith) that are not used exclusively in connection with their permitted agricultural use of the Property (see "non-farm" equipment listed on Jt. Ex. 23, as edited on plaintiff's Ex. 6 attached to its reply memorandum).
Defendants must take immediate measures to comply, in full, with the terms of this injunction, and full compliance must occur no later than thirty days after the entry of a court order memorializing these terms.
This Court declines to impose a fine on defendant Lucena, as requested by the Town, as it has failed to develop an adequate factual record to support a finding that the defendant willfully violated the cease and desist order issued by the Town in 1997. There is an absence of evidence concerning the defendant's understanding of the order (especially given its wording), the defendant's withdrawal of his appeal of that order, and the dismissal of criminal charges against the defendant for allegedly violating that order. In light of the defendant's past conduct, however, this Court has imposed a restraining order that is broader and more specific in its terms than the prior cease and desist order. Should the defendants disagree with the terms of this order or have any questions as to its terms, they must seek modification and/or clarification of the order by the Court. A failure by the defendants to abide by the strict terms of this order could result in this Court holding them in contempt.
Counsel shall confer and present to the Court forthwith an agreed upon form of order and judgment, consistent with this decision.